**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| RICHARD MONTGOMERY,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, F.C.I. FAIRTON,<br><br>Respondent. | Civ. No. 23-3780 (RMB)<br><br>**OPINION** |

**RENÉE MARIE BUMB,** Chief United States District Judge

This matter comes before the Court upon Petitioner Richard Montgomery's *pro se* Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prison's computation of his sentence (Sec. Am. Pet., Dkt. No. 14), Respondent's Answer (Answer, Dkt. No. 17), and Petitioner's Replies (Dkt. Nos. 18-19, 22-23).

Petitioner, a federal inmate at Federal Correctional Institution ("FCI") Fairton, challenges the Federal Bureau of Prisons' ("BOP") computation of his sentence. He contends that the BOP should credit his current 272-month sentence with the time he spent in custody from his June 5, 2008 arrest through his July 27, 2012 resentencing. (Petition, Dkt. No. 1 ¶ 6.) Respondent argues that Petitioner failed to exhaust his administrative remedies, but the BOP properly calculated his

sentence and awarded him prior custody time and as such, cannot double credit Petitioner with time served. (Answer, Dkt. No. 11 at 7-9.)

For the reasons set forth below, the Court will dismiss the Second Amended Petition for failure to exhaust administrative remedies. Alternatively, even assuming Petitioner had exhausted his administrative remedies, the Court would dismiss the Petition on the merits.

## I. BACKGROUND

The following background is drawn from the parties' submissions, and the material events are undisputed. Petitioner is serving an aggregate 272-month sentence for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). (Judgment, dated July 30, 2012, Dkt. No. 11-1 at 34-40; Petition ¶ 2.)

### A. Original Sentences (*Montgomery I* and *Montgomery II*)

Petitioner's sentencing history will be referred to in three parts, beginning with *United States v. Montgomery*, No. 95-375 (W.D. Tex. Dec. 13, 1995) ("*Montgomery I*"). On December 18, 1998, the United States District Court for the Western District of Texas sentenced Petitioner in two cases. First, in *Montgomery I*, the court sentenced Petitioner to a term of 120 months' imprisonment followed by three years of supervised release for conspiracy to interfere with commerce by robbery. (*Montgomery I*, Crim. No. 95-375 (W.D. Tex.), Dkt. No. 154.) In *United States v. Montgomery*, No. 97-12 (W.D. Tex. Jan. 10, 1994) ("*Montgomery II*"), the court imposed 120 months'

imprisonment followed by five years of supervised release for two counts of armed bank robbery in violation of 18 U.S.C. § 2113(d), and ordered $83,570 in restitution. (*Montgomery II*, Crim No. 97-12 (W.D. Tex.), Dkt. No. 18.) The Court ordered both terms to run concurrently. (Public Information Inmate Data, Dkt. No. 11-1 at 6-8; Declaration of Stephen P. Smith ("Smith Declaration"), Dkt. No. 11-1 ¶ 3.)

### B. The 2008 Offense (*Montgomery III*) and Revocation of Supervised Release Sentence

On August 30, 2004, the BOP released Petitioner from federal custody after he served the aggregate 120-month sentence imposed in *Montgomery I* and *Montgomery II*. (Public Information Inmate Data, Dkt. No. 11-1 at 6-8.) Petitioner then began serving the concurrent supervised release term imposed in *Montgomery I* and *II*, with the longer five-year term imposed in *Montgomery II* governing the period of supervision. (*Id.* at 6-7; Smith Declaration ¶ 3.) On June 5, 2008, while on supervised release, San Antonio police arrested Petitioner for aggravated robbery and possession of a firearm during a crime of violence in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 924(c)(1). (Petition for Warrant or Summons for Offender Under Supervision, dated June 11, 2008, Dkt. No. 11-1 at 10-12; Smith Declaration ¶ 4.) On June 17, 2008, federal prosecutors commenced *United States v. Montgomery*, Crim. No. 08-387 (W.D. Tex.) ("*Montgomery III*"), by filing an information charging Petitioner with armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). (Information, Dkt. No. 11-1 at 14-15; Smith Declaration ¶ 5.)

On August 28, 2009, the district court sentenced Petitioner to an aggregate term of 262 months' imprisonment in *Montgomery III*. The judgment provided as follows:

> This sentence consists of 178 months imprisonment on Count One and 84 months imprisonment on Count Two to be served consecutively. This sentence shall run concurrent with the sentences imposed in SA-95-CR-375(1)-OLG [*Montgomery I*] and SA-97-CR-12(1)-OLG [*Montgomery II*] with credit for time served while in custody for this federal offense pursuant to 18 U.S.C. § 3585(b).

(Judgment, dated Sept. 21, 2009, Dkt. No. 11-1 at 17-23; Smith Declaration ¶¶ 6-7.) Shortly thereafter, on September 4, 2009, the district court separately revoked Petitioner's supervised release in *Montgomery I* and *Montgomery II* based on the underlying conduct in *Montgomery III*, which occurred on June 5, 2008. (Order Revoking Supervised Release and Resentencing, Dkt. No. 11-1 at 24-26.) The district court imposed a twenty-four-month term for *Montgomery I* and two consecutive thirty-six-month terms for *Montgomery II*, resulting in an aggregate 96-month revocation sentence. (*Id.*) The district court ordered the revocation term to run concurrently with the 262-months' imprisonment from the original *Montgomery III* sentence. (*Id.*; Smith Declaration ¶ 7.)

### C. Vacatur of the Original *Montgomery III* Judgment

Thereafter, Petitioner appealed the original *Montgomery III* judgment before the Fifth Circuit, arguing that the Government breached the plea agreement by failing to recommend application of U.S.S.G. § 2B3.1 and that the district court improperly applied the career offender sentencing enhancement under U.S.S.G. § 4B1.1. *United*

*States v. Montgomery*, No. 09-50809, slip op. at 2 (5th Cir. Sept. 30, 2013) (per curiam). After reviewing the plea agreement and the sentencing hearing transcript, the Government filed an unopposed motion to vacate the district court's judgment of the 262-month sentence and permit Petitioner to withdraw his guilty plea based on the parties' material misunderstanding of the terms of the plea, namely, whether Petitioner would be sentenced as a career offender, and the likely sentence he would receive. *Id.* at 2-3.

On July 26, 2011, the Fifth Circuit granted the Government's motion to vacate the judgment of the district court in *Montgomery III*, and remanded the case. *Id.* The Order was entered on July 28, 2011. (Fifth Circuit Order, Dkt. No. 11-1 at 27-28.) Importantly, the Fifth Circuit's Order addressed the judgment of 262 months in *Montgomery III* and did not disturb the separate revocation of supervised release judgment from *Montgomery I* and *Montgomery II*. (*Id.*; Order Revoking Supervised Release and Resentencing the Defendant, Dkt. No. 11-1 at 24-26.) Thus, at this time, Petitioner was still serving the 96-month revocation of supervised release sentence throughout the remand.

### D. Post-Remand *Montgomery III* Sentence

Following the remand, on September 13, 2011, a grand jury returned a superseding indictment against Petitioner for the same *Montgomery III* case involving the June 5, 2008 arrest, charging him with three counts of bank robbery in violation of 18 U.S.C. § 2113 (Counts One, Three, and Five), and three counts of use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Two, Four, and

Six). (Superseding Indictment, dated Sept. 13, 2011, Dkt. No. 11-1 at 30-32.) On July 19, 2012, Petitioner pleaded guilty to Counts Five and Six, and on July 27, 2012, the district court imposed the current aggregate sentence of 272 months. (Judgment, dated July 30, 2012, Dkt. No. 11-1, Dkt. 139 at 1-7.) At sentencing, the district court ordered the following: "ONE HUNDRED EIGHTY-EIGHT (188) MONTHS on Count Five (5) and EIGHTY-FOUR MONTHS (84) on Count Six (6) to be served consecutively with credit for time served while in custody for this federal offense pursuant to 18 U.S.C. § 3585(b)." (*Id.*) The written judgment was entered on July 30, 2012. (*Id.*) The district court directed that Petitioner receive "credit for time served while in custody for this federal offense pursuant to 18 U.S.C. § 3585(b)[,]" but did not state whether the new 272-month sentence would run concurrently with the undisturbed 96-month revocation of supervised release sentence that Petitioner was still serving at the time.

The Court further notes that the sentencing transcript does not contain any indication of any adjustment under U.S.S.G. § 5G1.3 nor did any party request such an adjustment during the hearing. *See generally United States v. Montgomery*, Crim. No. 08-387 (W.D. Tex. July 27, 2012); (Sentencing Tr., Dkt. No. 154 at 2-4, 10-12.)

Because the district court was silent on whether the 96-month sentence related to Petitioner's violation of supervised release was to run concurrent with the new 272-month *Montgomery III* sentence, the BOP determined that Petitioner's new 272-month sentence commenced on July 27, 2012, the date the sentence was imposed, pursuant to 18 U.S.C. § 3585(a). (Judgment, dated July 30, 2012, at 1-7; Smith Declaration ¶¶

10-11.) As such, the BOP initially treated the new sentence as consecutive to the undisturbed revocation of supervised release sentence. (Smith Declaration ¶¶ 10-11.)

### E. Sentencing Timeline

The below timeline summarizes how Petitioner's sentences across *Montgomery I*, *II*, and *III* operated and how the BOP accordingly applied custody credit.

| **Time Period** | **Sentence** | **Custody Credit** |
|---|---|---|
| Dec. 18, 1998 – Aug. 30, 2004 | Concurrent 120-month imprisonment terms for *Montgomery I* and *Montgomery II* | 120 months imprisonment<br><br>(Public Information Inmate Data, Dkt. No. 11-1 at 6-8; Smith Declaration ¶ 3.) |
| Aug. 30, 2004 – June 5, 2008 | Concurrent supervised release terms of three years for *Montgomery I* and five years for *Montgomery II* | Five years of supervised release<br><br>(*Id.*) |
| Jun. 5, 2008 – Sept. 3, 2009 | Arrest and detention for the *Montgomery III* conduct in violation of supervised release awarded in *Montgomery I* and *Montgomery II* | The BOP later credited this time period toward the current 272-month sentence<br><br>(Smith Declaration ¶¶ 4, 12.) |
| Sept. 4, 2009 – July 26, 2011 | Original 262-month *Montgomery III* sentence and 96-month revocation of supervised release sentence ran concurrently | The BOP counted each day toward the original *Montgomery III* sentence (while still valid) and the 96-month revocation of supervised release sentence |

| | | |
|---|---|---|
| | | (Judgment, Dkt. No. 11-1 at 17–23; Orders Revoking Supervised Release and Resentencing, Dkt. No. 11-1 at 24-26; Smith Declaration ¶ 7.) |
| July 27, 2011 – July 26, 2012 | Original *Montgomery III* Judgment of 262 months vacated by the Fifth Circuit and remanded to the district court | During the remand, each day continued to count toward the 96-month revocation of supervised release sentence<br><br>(Fifth Circuit Order, Dkt. No. 11-1 at 27–28; Smith Declaration ¶ 8.) |
| July 27, 2012 – June 17, 2015 | The district court sentenced Petitioner to 272 months for post-remand *Montgomery III* while the 96-month revocation of supervised release sentence continued to run concurrently with the new sentence | Each day counted towards both the new 272-month sentence and the 96-month revocation of supervised release sentence<br><br>(Judgment, Dkt. No. 11-1 at 34–40; Sentencing Court Email, *id.* at 49; Smith Declaration ¶¶ 10–12.) |
| Post June 17, 2015 | Completion of the 96-month revocation of supervised release sentence | Only the current 272-month sentence continued to run<br><br>(Smith Declaration ¶ 12.) |

**F. Exhaustion of Administrative Remedies**

On February 8, 2017, Petitioner submitted an administrative remedy request

challenging the BOP's computation of his sentence, arguing that his post-remand *Montgomery III* sentence should have commenced on June 5, 2008, the date of the arrest, instead of July 27, 2012. (Administrative Remedy Appeal, dated Feb. 8, 2017, Dkt. No. 11-1 at 42-44.) During the BOP's review of the appeal, it contacted the sentencing judge for clarification on the prison term for the revocation of supervised release sentence. (Sentencing Court Email Communication, dated Mar. 23, 2017, Dkt. No. 11-1 at 49; Smith Declaration ¶ 11.) The sentencing judge explained that "the newly imposed 272-month term . . . [would] run concurrent with the revocation sentences in SA-95-CR-375 [*Montgomery* I] and SA-97-CR-12(1) [*Montgomery* II] as previously ordered." (*Id.*) Accordingly, the BOP revised its computation so that the new sentence ran concurrent with the 96-month revocation of supervised release sentence. (Smith Declaration ¶ 12.) Also, in accordance with the judgment, the BOP awarded Petitioner prior custody credit from June 5, 2008, the date of his arrest, through September 3, 2009, the day before the commencement of the revocation of supervised release sentence toward his current 272-month sentence. (*Id.*)

On January 18, 2019, Petitioner sought administrative relief again, when he submitted a request to the Warden regarding the same prior custody credit issue. (Declaration of Christina Clark ("Clark Declaration") ¶ 4, Ex. 2, Dkt. No. 11-2 at 2-3, 10-13.) The Warden denied the request because, under 18 U.S.C. § 3585(a), the earliest date a sentence can commence is the date it was imposed. (*Id.*) The Warden explained that the current 272-month post-remand *Montgomery III* sentence commenced on July 27, 2012, the date it was imposed. (*Id.*)

On July 26, 2019, Petitioner then appealed to the BOP Central Office, which rejected the appeal as improperly filed and instructed Petitioner to resubmit within fifteen days. (Clark Declaration ¶ 4, Ex. 2, Dkt. No. 11-2 at 2-3, 10-13.) Approximately nine months later, on April 24, 2020, Petitioner resubmitted the appeal, which the BOP Central Office again rejected as untimely and instructed him to resubmit with staff verification that the untimely filing was no fault of his own. (*Id.*)

### G. Procedural History

The record does not indicate that Petitioner resubmitted his appeal to the BOP Central Office. Instead, Petitioner filed the instant Petition Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on July 14, 2023, alleging that the BOP improperly computed his sentence by commencing his sentence on July 27, 2012, instead of June 5, 2008. (*See generally* Petition, Dkt. No. 1.) Petitioner filed a motion to amend the Petition to include the July 30, 2012 Judgment (Dkt. No. 9), which the Court granted (Dkt. No. 10). On February 5, 2024, Respondent filed an answer to the Amended Petition (Dkt. No. 11), to which Petitioner filed a reply (Dkt. Nos. 12-13). On February 28, 2025, Petitioner filed a second motion to amend the Amended Petition to include a motion to appoint counsel (Dkt. No. 14). The Court granted the motion to amend the Amended Petition and denied the motion to appoint counsel (Dkt. No. 15). On May 22, 2025, Respondent submitted a response to the Second Amended Petition (Dkt. No. 17) and Petitioner submitted several replies (Dkt. Nos. 18-19, 22-

23).[1]

## II. DISCUSSION

A prisoner may challenge the BOP's calculation of his/her federal sentence in a habeas corpus petition under 28 U.S.C. § 2241. *Savage v. Zickefoose*, 446 F. App'x 524, 526 (3d Cir. 2011) (per curiam). Accordingly, the Court has jurisdiction over the Petition.

### A. Petitioner Failed to Exhaust his Administrative Remedies

A federal inmate ordinarily must exhaust administrative remedies before seeking habeas relief under 28 U.S.C. § 2241. *Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). The judicially imposed exhaustion requirement (1) facilitates judicial review by allowing the appropriate agency to develop a factual record and apply its expertise, (2) conserves judicial resources by permitting agencies to grant the relief requested, and (3) fosters administrative autonomy by providing agencies the opportunity to correct their own errors. *Moscato*, 98 F.3d at 761-62 (citations omitted). "Proper exhaustion requires that a prisoner present his claim at every administrative level." *Concepcion v. Warden*

[1] Although Petitioner filed a Motion for Summary Judgment (Dkt. No. 22) in response to Respondent's answer to his Second Amended Petition, the Court construes Petitioner's filing as a reply because a motion for summary judgment is procedurally improper in the habeas context. *See Scott v. FCI Fairton*, No. CIV.A.09-0929 (RMB), 2010 WL 2540456, at *3 (D.N.J. June 16, 2010), *aff'd*, 407 F. App'x 612 (3d Cir. 2011) (finding that the petitioner's motion for summary judgment was improper as the court will decide the petition for writ of habeas corpus in due course, rendering the motion superfluous); *see also Schweitzer v. United States*, 2006 WL 1149245, *1 n.4 (M.D.Pa.) (denying motion for summary judgment on the basis that it was not a proper procedural mechanism for addressing the petitioner's habeas claims).

*Allenwood FCI*, 750 F. App'x 184, 185 (3d Cir. 2019) (per curiam). The administrative remedy procedures for federal prisoners are set forth at 28 C.F.R. §§ 542.10-542.18. Absent proper exhaustion of administrative remedies, "judicial review is barred unless [the prisoner] can demonstrate cause and prejudice." *Johnson v. Warden Big Sandy USP*, 708 F. App'x 745, 747 (3d Cir. 2017) (per curiam).

The BOP administrative remedy program requires an inmate to file his formal administrative remedy request with the Warden of the institution. 28 C.F.R. § 542.14(a). If that result is unsatisfactory, the inmate may appeal to the appropriate BOP Regional Director within twenty calendar days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). If dissatisfied with the Regional Director's response, the inmate may finally appeal to the General Counsel in the BOP Central Office within thirty calendar days of the date the Regional Director signed the response. 28 C.F.R. § 542.15(a). An inmate has exhausted his remedies after appeal to and denial by the Central Office. *Id.* If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Petitioner alleges that the BOP improperly computed his sentence because it failed to credit him for time served between September 4, 2009 to July 26, 2012, the commencement of the post-remand *Montgomery III* sentence. (Petition at 2.) Petitioner further argues that he partook in all administrative remedies available to him and despite this, the BOP "failed to correct [his] computation sheet to reflect the

proper time." (Petitioner's Reply, Dkt. No. 22 at 5.) Here, the record reflects that Petitioner submitted formal appeals to the Warden, the Regional Director, and the Central Office. (Smith Declaration ¶¶ 11-12; Clark Declaration, Ex. 2, Dkt. No. 11-2 at 11.) Petitioner received denials from the Warden and Regional Director, and his first submission to the Central Office was rejected as improper, and his second was rejected as untimely. (*Id.*) Respondent argues that because Petitioner never re-submitted his appeal to the Central Office before filing the instant Petition, he failed to exhaust his administrative remedies. (Answer at 5-6.)

As a preliminary matter, the Court finds that Petitioner failed to exhaust his administrative remedies because he abandoned the administrative remedy process at the Central Office level, where he failed to re-file his appeal within the prescribed time period. *See Tiffin v. USP-Lewisburg Warden*, No. 1:13-CV-0851, 2013 WL 4813438, at *4 (M.D. Pa. Sept. 9, 2013), *aff'd sub nom. Tiffin v. Lewisburg*, 589 F. App'x 609 (3d Cir. 2014) (finding that because the petitioner never re-filed his appeal with the BOP Central Office after it rejected his appeal and gave him fifteen days to properly re-file with the necessary documents, the petitioner failed to fully exhaust his administrative remedies); (Clark Declaration ¶ 4.) Petitioner does not assert that further administrative appeals would have been futile, nor do the facts suggest that. As such, the Court dismisses the Second Amended Petition for failure to exhaust administrative remedies.

### B. The Merits of the Petition Fail

Alternatively, the Court will address the merits of the Petition. At issue here is a dispute regarding prior custody credit. Petitioner seeks credit toward his current 272-month sentence for time spent in custody between June 5, 2008 and July 26, 2012. (Petition at 2.) Respondent argues that a federal sentence cannot commence before the date of imposition pursuant to § 3585(a). (Answer at 13.) Respondent argues that Petitioner was awarded prior custody credit for "every day that he was in detention before he was sentenced for a violation of supervised release[,]" which amounted to time spent in custody from June 5, 2009, the date of his arrest, through September 3, 2009, the day before the revocation of supervised release sentence began. (*Id.* at 13-14.) The Court agrees with Respondent.

#### i. The Post-Remand *Montgomery III* Sentence Commenced on July 27, 2012

The calculation of federal sentences is governed by 18 U.S.C. § 3585, which requires two determinations: (1) when the federal sentence commences; and (2) whether the prisoner is eligible for prior custody credit. 18 U.S.C. § 3585(a)-(b). 18 U.S.C. § 3585(a), the relevant statute for sentence commencement, provides as follows:

> (a) Commencement of sentence.--**A sentence to a term of imprisonment commences on the date the defendant is received in custody** awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(Emphasis added); *see also Nieves v. Scism*, 527 F. App'x 139, 140-41 (3d Cir. 2013) (per curiam) ("In calculating a sentence, the BOP determines (1) when the federal sentence commenced, and (2) whether there are any credits to which the prisoner may be entitled.") (citing 18 U.S.C. § 3585). "[A] federal sentence cannot begin to run earlier than on the date on which it is imposed." *Rashid v. Quintana*, 372 Fed. Appx. 260, 262 (3d Cir.2010) (citing *United States v. Labeille–Soto*, 163 F.3d 93, 98 (2d Cir.1998)). Here, in accordance with § 3585, the Court finds that the BOP correctly determined that the post-remand *Montgomery III* sentence commenced on July 27, 2012, the date it was imposed. (Judgment, dated July 30, 2012, Dkt. No. 11-1, Dkt. 139 at 34-40.)

**ii. The BOP Correctly Calculated Petitioner's Prior Custody Credit Under § 3585(b)**

18 U.S.C. § 3585(b), the relevant statute for prior custody credit, sets forth as follows:

> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> **that has not been credited against another sentence.**

(Emphasis added). "[A] federal prisoner can receive credit for certain time spent in official detention before his sentence begins, as long as that time has not been credited

against any other sentence." *Nieves*, 527 F. App'x at 140-41. Section 3585(b) makes clear that prior custody credit cannot be double counted." *See Williams v. Zickefoose*, 504 F. App'x 105, 107 (3d Cir. 2012) (per curiam) (citing *United States v. Wilson*, 503 U.S. 329, 337 (1992)). The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. *Id.* Thus, the BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence.

On September 4, 2009, the district court revoked Petitioner's supervised release awarded in *Montgomery I* and *Montgomery II* based on the June 5, 2008 arrest, the conduct underlying *Montgomery III*. (Order Revoking Supervised Release and Resentencing, Dkt. No. 11-1 at 24-26.) The district court subsequently sentenced Petitioner to 96 months' imprisonment for violating supervised release, which was to run concurrently with the then-existing 262-month *Montgomery III* sentence. (*Id.*; Smith Declaration ¶ 7.) On July 19, 2012, Petitioner pleaded guilty to Counts Five and Six of the Superseding Indictment in *Montgomery III* and, on July 27, 2012, he was sentenced to 272 months' imprisonment. (Judgment, dated Jul. 30, 2012, Dkt. No. 11-1, Dkt. No. 139 at 1-7.)

Once Petitioner initiated the administrative appeals process, the district court clarified that its "intent was that the newly imposed 272-month term . . . run concurrent with the revocation sentences in SA-95-CR-375 and SA-97-CR-12(1) as previously ordered." (Sentencing Court Email Communication, dated March 23, 2017, Dkt. No. 11-1 at 49; Smith Declaration ¶ 11.) The BOP accordingly revised Petitioner's sentence to run concurrently with the 96-month revocation of supervised

release sentence. (Smith Declaration ¶ 12.) The BOP determined that Petitioner is entitled to prior custody credit for time spent in custody from June 5, 2008, the date of arrest, through September 3, 2009, the day before the commencement of the revocation of supervised release sentence. (*Id.*) Petitioner now seeks additional prior custody credit for the time spent in custody from September 4, 2009, through July 26, 2012. (Petition at 2.)

The Court holds that the BOP properly declined to award that additional credit in accordance with § 3585(b). Petitioner's 96-month revocation of supervised release sentence began on September 3, 2009, and ended on June 17, 2015. (Order Revoking Supervised Release and Resentencing, Dkt. No. 11-1 at 24-26.) During that time period, the original 262-month *Montgomery III* sentence was vacated and remanded on July 26, 2011, then resentenced on July 27, 2012, to 272 months. (Fifth Circuit Order, dated July 26, 2011, Dkt. No. 11-1 at 27-28; Judgment, dated July 30, 2012, Dkt. No. 11-1 at 34-40; Smith Declaration ¶¶ 8–10.) However, Petitioner's 96-month revocation of supervised release sentence was running throughout this time from September 3, 2009. To the extent the Court comprehends Petitioner's argument, Petitioner believes that the time served from June 5, 2008, the date of arrest, to July 27, 2012, was essentially time spent in custody that was not counted towards a sentence, or, said differently, dead time. (Petition at 2.) However, Petitioner is mistaken.

The record reflects that the time served in custody between September 4, 2009 and July 26, 2012 was in fact credited toward Petitioner's 96-month revocation of supervised release sentence. (Order Revoking Supervised Release and Resentencing,

Dkt. No. 11-1 at 24-26; Smith Declaration ¶¶ 7-8, 12.) In other words, the time Petitioner spent in custody during that period was credited against the 96-month revocation of supervised release sentence. Therefore, because this time period was already counted towards another sentence, in this case, the 96-month revocation of supervised release sentence, the Court finds that the BOP is statutorily precluded from awarding Petitioner prior custody credit for time served between that period. *See Vega v. United States*, 493 F.3d 310, 314 (3d Cir. 2007) (finding that the BOP did not err when it disallowed credit under § 3585(b) because the time at issue had been credited against the petitioner's state sentence).

The Court finds that the BOP properly calculated Petitioner's federal sentences in accordance with 18 U.S.C. § 3585. (Smith Declaration ¶¶ 11-12.) The BOP determined that Petitioner's sentence for post-remand *Montgomery III* commenced on July 27, 2012, the date the district court imposed the sentence. *See Rashid*, 372 F. App'x at 262; (Smith Declaration ¶ 12.) As such, on July 27, 2012, the revocation of supervised release sentence and the post-remand *Montgomery III* sentence ran concurrently. (*Id.*) Based on the date of commencement and prior custody credit under 18 U.S.C. § 3585(b), the BOP correctly awarded Petitioner prior custody credit for the time in custody from the date of his arrest on June 5, 2008 (for bank robbery and use of a firearm during a crime of violence) through September 3, 2009 (the day prior to the court imposing his supervised release sentence). (Smith Declaration ¶ 12.) As such, Respondent has established that Petitioner properly received prior custody credit against his sentence for the time period of June 5, 2008 to September 3, 2009.

**iii. The Court Does not have Jurisdiction to Alter the Length of Petitioner's Sentence through a § 2241 Petition**

Moreover, as Respondent argues, and the Court agrees, the Court does not have jurisdiction to review Petitioner's challenge to the length of his sentence through a Section 2241 petition. *See Jones v. Hendrix*, 599 U.S. 465, 473-74 (2023) (discussing how Congress passed 28 U.S.C. § 2255 to replace the use of § 2241 as a method of collaterally attacking convictions and sentences); *Ramirez v. Williamson*, 209 F. App'x 214, 216 (3d Cir. 2006) ("A federal prisoner's challenge to the legality of his conviction and his sentence must usually be raised in a § 2255 motion"). Petitioner challenges his sentence arguing that, "[s]ince the Sept[ember] 4, 2009 Judgment is invalid it should be corrected in order to determine the calculations." (Petitioner's Reply, Dkt. No. 12 at 2; Answer to Sec. Am. Pet., Dkt. No. 17 at 2.) Accordingly, to the extent Petitioner challenges the length of his sentence imposed by the Western District of Texas, this Court lacks jurisdiction to alter his sentence through a § 2241 Petition.

**iv. U.S.S.G. § 5G1.3 does not Apply to Petitioner's Case**

Respondent further argues that U.S.S.G. § 5G1.3 provides the sentencing court, rather than the BOP, with the ability to credit the time Petitioner has already served on the revocation sentence from *Montgomery III*. (Answer at 13-15.) A sentence adjustment pursuant to § 5G1.3 is distinct from prior custody credit under 18 U.S.C. § 3585(b). *See Ruggiano v. Reish*, 307 F.3d 121, 131–33 (3d Cir. 2002). The BOP has exclusive authority to calculate prior custody credit under § 3585(b), but a sentencing court may adjust the sentence it imposes under § 5G1.3 to account for time credited

against another sentence. *Id.* Thus, although § 3585(b) generally prohibits the BOP from awarding double credit, that prohibition does not prevent a sentencing court from imposing a reduced sentence under § 5G1.3. *Id.* at 132-33.

Here, the record does not indicate that the sentencing court imposed any adjustment based on § 5G1.3, or in any other way state that the post-remand *Montgomery III* 272-month term was to be reduced for the period that Petitioner had already served on the revocation of supervised release sentence. Instead, the Judgment simply directs that Petitioner receive "credit for time served while in custody for this federal offense pursuant to 18 U.S.C. § 3585(b)." (Judgment, Dkt. No. 11-1 at 35.) Therefore, this language refers to the BOP's ability to apply prior custody credit, rather than an adjustment made by the sentencing court pursuant to § 5G1.3.

The sentencing judge's March 23, 2017 e-mail communication likewise clarified that the 272-month term was intended to run concurrently with the revocation sentences "as previously ordered," but did not state that the sentence had been adjusted for the period served before July 27, 2012. (Sentencing Court Email Communication, Dkt. No. 11-1 at 49.) The BOP accordingly implemented concurrency prospectively in that the sentences ran together from July 27, 2012, when the post-remand *Montgomery III* sentence commenced, until the revocation term was discharged on June 17, 2015. (Smith Declaration ¶ 12.) Therefore, to the extent Petitioner asks this Court to grant a § 5G1.3 adjustment that the Western District of Texas did not impose, such request challenges the sentence itself and cannot be granted under § 2241.

## IV. CONCLUSION

Based on the foregoing reasons, the Court dismisses the Second Amended Petition for failure to exhaust administrative remedies. An appropriate Order follows.

Dated: **August 27, 2026**

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge